■ THOMAS BOSWELL et al., Appellants, v LEEMILT'S PETROLEUM, INC., et al., Respondents. [676 NYS2d 313] —Peters, J. Appeal from an order of the Supreme Court (Lynch, J.), entered April 28, 1997 in Schenectady County, which granted defendants' motion for summary judgment dismissing the complaint.

In September 1988, plaintiffs purchased property next door to a gas station which was owned by defendant Leemilt's Petroleum, Inc. and leased to defendant Getty Petroleum Corporation. Shortly after taking possession, plaintiffs began to notice a smell of gasoline which, even with the windows closed, eventually permeated the house throughout the winter of 1988, getting stronger in the spring of 1989. At that time, plaintiff Thomas Boswell contacted Art Hilt, the manager of the Getty station, who attributed the smell to the foibles of living next door to a gas station. Plaintiffs were not informed at such time that, in May 1988 prior to their purchase of the property, Getty reported a loss of product from their underground storage tanks and thereafter retained Groundwater Technology, Inc. (hereinafter GTI) to conduct tests to determine if there was a gasoline leakage.

In June 1988, GTI confirmed that there was a leakage which required the removal of the tanks. After removal, GTI continued their investigation and remediation of the property, regularly reporting their results to the Department of Environmental Conservation (hereinafter DEC). Records show that on or about June 15, 1988, prior to plaintiffs' purchase, the foundations, walls and basement sump of their home were tested for volatile compounds pursuant to Getty's request. The report of testing, revealing "no detectable levels", was never disclosed to plaintiffs prior to their purchase.

By the winter of 1991, Boswell and his family were no longer able to use the basement of their home due to the permeation of the gasoline odors. While plaintiff observed GTI workers at the Getty station approximately three to six times per year between 1988 to 1991, he made no inquiry beyond Hilt. As remediation continued on defendants' property, GTI was reporting,

as of May 18, 1989, "that the recovery system is containing the ground water contamination in the vicinity of the former tank pit", that the "air striper in use on-site has removed greater than 99 percent of the volatile compounds in the treated ground water" and that "the system has prevented vapor migration to the neighboring home".

By letter dated May 12, 1993, GTI asked Boswell's permission, "[i]n an effort to determine the horizontal extent of petroleum hydrocarbon compounds in the soil and groundwater adjacent to the Getty service station", to allow it to place monitoring wells on his property. In lieu of contacting GTI for further information, Boswell simply requestioned Hilt who again provided no further information.* At about the same time, Boswell admits to having discovered a blackening on the south wall of his home. He contended that he first learned of a "petroleum spill on adjacent property" by letter from DEC in October 1993. Following receipt of this letter, Boswell met with representatives from DEC, Getty and GTI wherein he was told that his property had been contaminated as a result of a spill.

On September 16, 1994, this action was commenced against Leemilt, with amendment on January 12, 1995 to join Getty. Therein, no claims were made for personal injuries, only trespass and nuisance by the seepage of gasoline onto the property and the pervasion of its vapors. In addition to the assertion of damages emanating therefrom, a violation of the Navigation Law was also alleged, with plaintiffs seeking recovery for all direct and indirect damages to be sustained in connection with the remediation of the property.

After joinder of issue, defendants moved for summary judgment, contending that the action was barred by the Statute of Limitations. Supreme Court, upon its reading of the amended complaint in which it was alleged that the "seepage" occurred sometime in 1988 and that the presence of gasoline vapors on and around the property existed from the date of their initial occupancy, granted the motion. Finding the extended limitations period permitted by CPLR 214-c to be inapplicable, it dismissed the action as untimely pursuant to CPLR 214 (4). This appeal ensued.

We note, preliminarily, that "[m]odern principles of procedure do not permit an unconditional grant of summary judgment against a plaintiff who, despite defects in pleading, has in his submissions made out a cause of action" (*Alvord & Swift*

---

* Notably, approximately one year prior to receiving this letter from GTI, Boswell freely permitted, without further questioning, GTI's trucks to enter onto his property in order to drill monitoring holes.

*v Muller Constr. Co.*, 46 NY2d 276, 279). Unlike Supreme Court, we find sufficient evidence in this record, despite clear defects in pleading, to raise an issue regarding plaintiffs' discovery of the "primary condition on which the claim is based" (*Wetherill v Eli Lilly & Co.*, 89 NY2d 506, 509).

Addressing the applicability of CPLR 214-c, we agree that unlike a tort action concerning personal injury from toxic exposure which, if here propounded, would date back to September 1988 (*cf., Oeffler v Miles, Inc.*, 241 AD2d 822), the allegations before us pertain to property damage caused by gasoline contamination. Hence, for purposes of CPLR 214-c, the claim must be deemed to have accrued when plaintiffs either knew or should have known that contamination had actually occurred by its entry onto their property. Upon this record, it appears that the claim must be deemed to have accrued when black pigmentation inside the south wall of the home was first noticed. With this timing coinciding with the request by GTI for permission to environmentally assess plaintiffs' property, for purposes of this motion the claim must be deemed to have accrued in May 1993. Since the action was commenced within three years from that date, we find those causes of action alleging damage to property due to the seepage of gasoline thereon to be timely (*see, Jensen v General Elec. Co.*, 82 NY2d 77; *Oliver Chevrolet v Mobil Oil Corp.*, 249 AD2d 793; *Grossjahann v Wilkins & Sons*, 244 AD2d 808; *Scheg v Agway, Inc.*, 229 AD2d 963). In so finding, we note that had plaintiffs commenced this action as of the 1989 accrual date determined by Supreme Court when the vapors became evident, the action could have been dismissed since there had been no actual intrusion onto their property (*see, Nalley v General Elec. Co.*, 165 Misc 2d 803, 809).

Finding that the claims predicated upon the Navigation Law have not yet accrued (*see, White v Long*, 229 AD2d 178), we hereby reinstate the causes of action alleging property damage due to the gasoline contamination from the neighboring property and, as so modified, affirm.

Mercure, J. P., Spain, Carpinello and Graffeo, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the motion regarding the causes of action alleging property damage due to the contamination from the neighboring property; motion denied regarding said causes of action; and, as so modified, affirmed.