■ IRVING HAND et al., Respondents, v STRAY HAVEN HUMANE SOCIETY AND S.P.C.A., INC., et al., Appellants. [799 NYS2d 628]—

Cardona, P.J. Appeal from an order of the Supreme Court (Rumsey, J.), entered February 26, 2004 in Tioga County, which, inter alia, partially granted plaintiffs' cross motion for partial summary judgment.

In response to repeated complaints concerning the condition of plaintiffs' livestock, Thomas Cipar, a cruelty investigator for defendant Stray Haven Humane Society and S.P.C.A., Inc., responded to plaintiffs' property in Tioga County at approximately 8:00 A.M. on September 15, 2000. Upon his arrival, Cipar observed several horses and donkeys in barren pastures abutting the road and further noted that the animals had not been provided with adequate food and water. Cipar entered upon plaintiffs' property and approached the door of the residence, whereupon he witnessed two additional horses in similar circumstances and a caged Rottweiler with no food and putrid water. When it became apparent that plaintiffs were not home, Cipar left the property.

Approximately four hours later, Cipar returned to the property with another employee of Stray Haven and observed that the condition of the animals had not improved. His companion noted that the animals appeared emaciated and that a particular stallion was afflicted with numerous bite marks. Plaintiffs were still not at home, so Cipar and his coworker departed the property.

At roughly 4:00 P.M., Cipar returned to the property with defendant Robin Rodgers, an equine veterinarian. On this occasion, Cipar was met by plaintiff Irving Hand. After Cipar explained to Hand that he was present to investigate the condition of plaintiffs' animals, Hand granted Rodgers permission to examine the animals and accompanied Rodgers and Cipar as they toured the property. In a nearby barn, two mares were discovered with foals. The horses had no food or water, were standing in a deep accumulation of feces and, apparently, one of the mares had miscarried a foal, which laid dead in the stall under the horse's feet. Based on her observations, Rodgers concluded that the horses were malnourished and in need of immediate veterinary attention.

At approximately 11:00 P.M. that same day, Cipar again returned to the property accompanied by several volunteers and two deputies from the Tioga County Sheriff's Department.

Plaintiffs were arrested on charges of animal cruelty, and 14 horses and donkeys, among other animals, were removed and transported to Stray Haven's offices for appropriate medical treatment. In connection with plaintiffs' mistreatment of the animals, they were convicted of misdemeanors and sentenced to one-year conditional discharges which, among other things, returned six of the horses to plaintiffs' care and imposed strict restrictions upon plaintiffs' future ownership of livestock.

In 2001, plaintiffs commenced this action against Stray Haven, Rodgers and a Stray Haven volunteer asserting, among other things, a trespass cause of action. Following joinder of issue, Supreme Court granted plaintiffs summary judgment on the issue of defendants' liability for trespass, prompting this appeal by defendants.[1]

"Any unauthorized entry upon land of another constitutes a 'trespass' " (104 NY Jur 2d, Trespass § 1, at 461-462). However, law enforcement personnel acting lawfully in the furtherance of their duty are excused from what may be otherwise trespassory acts (*see People v Czerminski*, 94 AD2d 957, 957 [1983], *lv denied* 59 NY2d 972 [1983]; *see also Voskerchian v United States*, 1999 WL 66709, *4, 1999 US Dist LEXIS 1439, *11-12 [WD NY, Elfvin J., 98-CV-0335E(M), 1999]; *Reynolds v United States*, 927 F Supp 91, 96 [1996]). Insofar as we conclude that the intrusions onto plaintiffs' land were for a permissible purpose and appropriately limited in scope, we cannot agree with Supreme Court's conclusion that defendants are liable for trespass as a matter of law.

Cipar was statutorily authorized, as a "peace officer" (CPL 2.10 [7]), to enforce the provisions of Agriculture and Markets Law article 26 (*see* Agriculture and Markets Law § 371). Said article explicitly criminalizes the failure to provide sufficient food, shelter and water to any animal (*see* Agriculture and Markets Law § 353). Here, citizen complaints concerning the condition of plaintiffs' animals prompted Cipar's initial visit to plaintiffs' farm and led to his personal observations of the animals located in fields near the road. Cipar's brief subsequent intrusion onto plaintiffs' property was for the purpose of discussing the matter with plaintiffs and ended as soon as it was ascertained that plaintiffs were not at home. Neither the first visit, nor Cipar's return a few hours later with a coworker, constituted an unreasonable intrusion (*see People v Kozlowski*,

---

1. We note that it is undisputed that Rodgers' only entry onto plaintiffs' property came upon Hand's consent (*see* 104 NY Jur 2d, Trespass § 34). Accordingly, on this basis alone, plaintiffs were not entitled to summary judgment as against Rodgers on the trespass cause of action.

69 NY2d 761, 762-763 [1987]). Notably absent from this record is any proof that plaintiffs erected fencing or signage or otherwise manifested an intention to exclude individuals from the portion of their property upon which Cipar intruded (see *People v Warmuth*, 187 AD2d 473, 474 [1992], *lv denied* 81 NY2d 894 [1993]; *People v Malatesta*, 186 Misc 2d 312, 317-318 [1999]; *see generally People v Scott*, 79 NY2d 474 [1992]). Moreover, although Cipar's third trip to plaintiffs' farm—this time in the company of Rodgers—yielded expanded access to plaintiffs' property, such intrusion only came after Hand gave his consent.

It appears that Supreme Court's determination that plaintiffs were entitled to summary judgment on their trespass cause of action was predicated upon the court's conclusion that plaintiffs were arrested inside their home when Cipar and others came to plaintiffs' farm for a fourth time on the day in question. Supreme Court concluded that, inasmuch as it was undisputed that plaintiffs were arrested without a warrant, plaintiffs' arrest inside their home could only be authorized by the presence of exigent circumstances (see *People v Jones*, 2 NY3d 235, 239 [2004]; *see generally Payton v New York*, 445 US 573 [1980]). Since the court concluded that no such exigency existed, it reasoned that the arrest was "indisput[edly] illegal[ ]" and, as a result, defendants' entry into plaintiffs' home was unauthorized and constituted trespass as a matter of law.

In our view, the record does not clearly support the factual conclusion that plaintiffs were arrested inside their home. The initial burden was on plaintiffs, as movants, to establish, by admissible evidence, their entitlement to judgment as a matter of law (see *JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 384 [2005]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Robinson v Robinson*, 11 AD3d 853, 854 [2004]). In support of their cross motion, plaintiffs produced no evidence that they were, in fact, arrested inside their home. In his affidavit and answers to interrogatories, Hand merely asserted that he and plaintiff Cynthia B. Dekar had been arrested without a warrant. Plaintiffs offered no evidence indicating where the arrest took place and, in fact, the proof submitted by defendants in opposition to plaintiffs' cross motion seems to indicate that the arrest occurred at plaintiffs' doorway (see *People v Andino*, 256 AD2d 153, 154 [1998], *lv denied* 93 NY2d 922 [1999]; *People v Schiavo*, 212 AD2d 816, 816 [1995], *lv denied* 85 NY2d 942 [1995]; *People v Min Chul Shin*, 200 AD2d 770, 770-771 [1994],

*lv denied* 83 NY2d 913 [1994]).[2] In any event, inasmuch as it was plaintiffs' initial burden to "tender[ ] sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see Winegrad v New York Univ. Med. Ctr., supra* at 853; *Robinson v Robinson, supra* at 854), we cannot conclude, on this record, that Stray Haven or its agents committed a trespass by effectuating a warrantless arrest inside of plaintiffs' home.

Moreover, in the absence of proof that plaintiffs were arrested inside their home, we cannot conclude that the circumstances surrounding the arrest and subsequent seizure of plaintiffs' animals constituted a trespass as a matter of law. A peace officer such as Cipar is statutorily authorized to make a warrantless arrest (*see* CPL 2.20 [1] [a]) and, if he or she is "acting pursuant to his [or her] special duties," such an arrest may be made upon reasonable cause that a crime has been committed (CPL 140.25 [1] [b]; *see* CPL 140.25 [2]). Based upon his personal observations and Rodgers' conclusion that plaintiffs' animals were in need of immediate medical attention, Cipar had reasonable cause to believe that plaintiffs had committed a misdemeanor offense (*see* Agriculture and Markets Law § 353). Finally, although statutory procedures exist whereby Cipar could have first obtained a warrant to seize the animals (*see* Agriculture and Markets Law § 373 [2]), Stray Haven was likewise empowered to take possession of the animals following plaintiffs' lawful arrest (*see* Agriculture and Markets Law § 373 [4]).

Mercure, Peters, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted plaintiffs' cross motion for partial summary judgment; cross motion denied in its entirety; and, as so modified, affirmed.

---

2. We note that the only indication in this record that plaintiffs were arrested inside of their home was in counsel's affirmation in support of plaintiffs' motion (*see Connor v Tee Bar Corp.*, 302 AD2d 729, 730 [2003]).