18-2018-cv
R.M. Bacon v. Saint-Gobain Performance Plastics Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2018

(Argued: April 17, 2019                    Decided: May 18, 2020)

Docket No. 18-2018[*]

_____

R.M. BACON, LLC and MICHAEL BACON,

*Plaintiffs-Appellees*,

- v. -

SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC.,

*Defendants-Appellants*[**].

_____

[*]     This appeal was consolidated for oral argument with the appeals in *Benoit v. Saint-Gobain Performance Plastics Corp.*, No. 17-3941, etc., and *Baker v. Saint-Gobain Performance Plastics Corp.*, No. 17-3942, which are resolved today in separate decisions.

[**]     The Clerk of Court is directed to amend the official caption to conform with the above.

Before: KEARSE, POOLER, and CARNEY, *Circuit Judges*.

In this action brought by a construction company operating in the Village of Hoosick Falls, New York, and the company's founder who owns land in and/or near the Village, alleging property damage resulting from defendants' negligence in using and disposing of perfluorooctanoic acid ("PFOA") in their manufacturing operations, thereby contaminating that land and the Village's water supply, defendants appeal pursuant to 28 U.S.C. § 1292(b) from so much of an order of the United States District Court for the Northern District of New York, Lawrence E. Kahn, *Judge*, as denied their motion under Fed. R. Civ. P. 12(b)(6) to dismiss the claims that defendants' negligence caused the corporate plaintiff to lose revenues and caused the individual plaintiff to suffer devaluation of his land, *see R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, No. 17-CV-0441, 2018 WL 1010210 (Feb. 20, 2018). Defendants contend that these alleged losses do not constitute injuries cognizable in an action for negligence under New York law. For the reasons that follow, we conclude that the district court properly denied the motion to dismiss the claim of the property owner but erred in denying the motion to dismiss the claim of the company.

Affirmed in part; reversed in part.

WILLIAM A. WALSH, New York, New York (Robin L. Greenwald, James J. Bilsborrow, Weitz & Luxenberg, New York, New York, on the brief), *for Plaintiffs-Appellees*.

MICHAEL D. DANEKER, Washington, D.C. (Elissa J. Preheim, R. Stanton Jones, William C. Perdue, Arnold & Porter Kaye Scholer, Washington, D.C.; Jennifer R. Kwapisz, Arnold & Porter Kaye Scholer, New York, New York, on the brief), *for Defendant-Appellant Honeywell International Inc.*

DECHERT, New York, New York (Sheila L. Birnbaum, Mark S. Cheffo, Bert L. Wolff, Lincoln Davis Wilson, New York, New York, of counsel), *for Defendant-Appellant Saint-Gobain Performance Plastics Corp.*

KEARSE, *Circuit Judge*:

In this action, plaintiffs R.M. Bacon, LLC ("RM"), a construction company operating in the Village of Hoosick Falls, New York (the "Village" or "Hoosick Falls"), and its founder Michael Bacon ("Bacon"), who owns land in and/or near the Village, pursue negligence claims alleging that defendants Saint-Gobain Performance Plastics Corp. ("Saint-Gobain") and Honeywell International Inc., f/k/a Allied-Signal Inc. ("Honeywell"), respectively the owner and a past owner of a manufacturing facility in the Village, used and disposed of the chemical perfluorooctanoic acid ("PFOA") in a manner that contaminated the Village's water supply and Bacon's land. Defendants appeal pursuant to 28 U.S.C. § 1292(b) from so much of an order of the United States

District Court for the Northern District of New York, Lawrence E. Kahn, *Judge*, as denied their motion under Fed. R. Civ. P. 12(b)(6) to dismiss claims that defendants' negligence caused RM to lose revenues and caused Bacon to suffer diminution in the value of his property, *see R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, No. 17-CV-0441, 2018 WL 1010210 (Feb. 20, 2018) ("*Bacon I*"). Defendants contend that neither of those alleged losses constitutes injury cognizable in an action for negligence under New York law. For the reasons that follow, we conclude that the district court properly denied defendants' motion to dismiss the claim of Bacon but erred in denying their motion to dismiss the claim of RM.

## I. BACKGROUND

This appeal was argued orally in tandem with two others decided today, including *Benoit v. Saint-Gobain Performance Plastics Corp.*, --- F.3d --- (2d Cir. 2020) ("*Benoit II*"). The three appeals deal with numerous actions brought in the district court against Saint-Gobain and Honeywell, asserting claims of injury resulting from defendants' contamination of the Village's water supply with PFOA, *see generally Benoit II*, --- F.3d at ---.

4

The factual allegations in the amended complaint in this action ("Am. Compl."), taken as true for purposes of considering a Rule 12(b)(6) motion, are set forth in the district court's opinion, *see Bacon I*, 2018 WL 1010210, familiarity with which is assumed. We summarize here more briefly plaintiffs' property damage claims premised on negligence, their other claims having been dismissed or withdrawn.

A. *The Amended Complaint*

RM, located in the Town of Hoosick (or "Hoosick Town"), which is adjacent to the Village, primarily provides home construction and home improvement services. (*See* Am. Compl. ¶¶ 76, 79, 81.) RM was organized by Bacon in 1985; by 2015 it had become "the leading construction company in an approximate[ly] 25-mile radius of Hoosick Falls" (*id*. ¶ 86); between 2010 and 2015, it performed excavation and roadway development work for virtually all new commercial construction in the area and for some 75 percent of all private property development, enjoying revenues of more than $1 million annually. (*See id*. ¶¶ 85-88.)

In 2015 and 2016, the United States Environmental Protection Agency ("EPA") issued health advisories for Village residents, stating that it was dangerous

5

to ingest water whose PFOA content was more than 70 parts per trillion, and advising against using Village water for drinking or cooking. (*See id*. ¶¶ 29, 56-57.) In 2017, the New York ("State") Department of Environmental Conservation ("DEC") reported on groundwater tests it had conducted at various Village locations connected with defendants. The lowest average PFOA content shown in those tests was 1,596 parts per trillion; the highest PFOA content was 130,000 parts per trillion. (*See id*. ¶ 50.)

> The EPA noted that peer-reviewed studies indicate that "exposure to PFOA over certain levels may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."

(Am. Compl. ¶ 30.)

The State placed defendants' manufacturing facility on the State Superfund list as a site presenting a significant threat to public health, and asked the federal government to designate that facility as a federal Superfund site; Honeywell entered into a consent order with the State; and Saint-Gobain agreed to provide Village residents with bottled water and to fund the installation and maintenance of filtration systems for the municipal water supply. (*See id*. ¶¶ 62, 48, 58.) The

6

amended complaint alleged that

> [t]he public is also generally aware that the DEC[-]overseen blood testing of local residents has uncovered incredibly high levels of PFOA in blood of many local community members. That testing reveals that most residents have PFOA in their blood well in excess of the national average.

(Am. Compl. ¶ 70.)

As a result of the "general knowledge" of PFOA in the Village, the "population" became "fearful of its long-term health" and "reluctant to undertake property development." (*Id*. ¶ 71.) At least one bank official publicly stated that his bank would not issue mortgages for any home connected to the municipal water supply; and some local banks indicated that they would not advance funds for the purchase or refinancing of a home in Hoosick Falls due to lack of access to potable water. (*See id*. ¶ 63.) As a result of PFOA contamination and the lack of available financing, "the economic development of the Village has largely ceased" (*id*. ¶ 67), and property values in Hoosick Falls have declined dramatically (*see id*. ¶ 66).

1. *The Effect on RM*

As alleged in the amended complaint, described by the district court,

> [t]he discovery of PFOA contamination in Hoosick Falls had

7

a profound impact on RM's business. [Am. Compl.] ¶ 90. The decline in property values, groundwater contamination, and lack of available financing caused nearly all home construction and improvement work to cease in 2016. *Id*. ¶ 90-105. RM "had no construction or excavation work scheduled at the start of July 2016," *id*. ¶ 102, and "no new contracts for 2016," *id*. ¶ 105. Its shrinking payroll reflects the economic downturn. From 2010 to 2016, RM had seven employees. *Id*. ¶ 101. By June 2016, the company had only one part-time and three full-time employees. *Id*. By September 2016, Bacon was RM's sole remaining employee, and he received no salary for his work. *Id*. ¶ 107. The company "experienced a substantial loss of revenue for the 2016 fiscal year." *Id*. ¶ 111. "Individuals have expressly stated that the presence of PFOA in the environment prevents them from hiring" RM. *Id*. ¶ 109.

*Bacon I*, 2018 WL 1010210, at *2. "[N]o property development occurred in the Village during 2016." (Am. Compl. ¶ 166.) The amended complaint alleges that by contaminating the Village's groundwater, defendants wreaked havoc on the local housing market and destroyed RM's business. (*See id*. ¶¶ 166-68.)

2. *The Effect on Bacon*

The amended complaint alleges that Bacon owns the Hoosick Town property on which RM is located, as well as approximately 90 surrounding acres. (*See* Am. Compl. ¶ 112.) The amended complaint does not allege that his drinking water has been affected but alleges that his property is contaminated with PFOA. (*See id*.

8

¶¶ 44, 161.) Bacon attempted to sell the property in 2016, offering it at $100,000 below its 2015 assessed value; but no one sought to purchase it or even looked at it. (*See id*. ¶¶ 113-114.) All told, Bacon's property has "lost approximately $250,000 of its value." (*Id*. ¶ 169.) Together, plaintiffs seek damages totaling $2.4 million.

B. *The Denial of Defendants' Motion To Dismiss*

Defendants moved for dismissal of plaintiffs' negligence claims, relying principally on *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*, 96 N.Y.2d 280, 727 N.Y.S.2d 49 (2001) ("*532 Madison*"). That case resulted from construction-related building collapses in midtown Manhattan--one on Madison Avenue and one near Times Square--that had not damaged the nearby plaintiffs' physical property but had resulted in street closures that prevented vehicular and pedestrian access to plaintiffs' businesses; plaintiffs' "sole injury [wa]s lost income," 96 N.Y.2d at 286, 727 N.Y.S.2d at 51. The New York Court of Appeals ruled that the plaintiffs had no cognizable negligence claim against the owners of the collapsed buildings for losses that were "purely economic." *Id*. at 290, 727 N.Y.S.2d at 54. Defendants here argued that this principle requires dismissal of the negligence claims of RM and Bacon.

9

The district court disagreed. It stated that "[t]he *532 Madison* court recognized that '[a] landowner who engages in activities that may cause injury to persons on adjoining premises surely owes those persons a duty to take reasonable precautions to avoid injuring them,'" *Bacon I*, 2018 WL 1010210, at *7 (quoting *532 Madison*, 96 N.Y.2d at 290, 727 N.Y.S.2d at 54), and that "[t]he *532 Madison* court limited the defendants' duty to those plaintiffs who were *physically* impacted by the collapse in order 'to avoid exposing defendants to unlimited liability to an indeterminate class of persons conceivably injured by any negligence in a defendant's act.'" *Bacon I*, 2018 WL 1010210, at *8 (quoting *532 Madison*, 96 N.Y.2d at 289, 727 N.Y.S.2d at 53) (emphasis added). Stating that

> "[c]entral to the [*532 Madison*] court's decision was the fact that there were "thousands" of potential claimants, representing "an indeterminate group in the affected areas . . . [who] may have provable financial losses directly traceable to the two construction-related collapses, with no satisfactory way geographically to distinguish among those who have suffered purely economic losses,"

*Bacon I*, 2018 WL 1010210, at *8 (quoting *532 Madison*, 96 N.Y.2d at 291, 727 N.Y.S.2d at 55), the district court concluded that "[t]hose concerns are not present here because there is a reasonable method to geographically . . . distinguish among those who have suffered purely economic losses," *Bacon I*, 2018 WL 1010210, at *8 (internal quotation

10

marks omitted):

> Unlike the plaintiffs in *532 Madison*, who were outside the immediate collapse area, RM operates within the contamination zone; PFOA has spread from [defendants'] facility to the property on which [RM] operates. Am. Compl. ¶ 44. Consequently, while the shopkeepers in *532 Madison* were only indirectly impacted by the defendants' conduct, RM has been directly impacted by the contamination.

*Bacon I*, 2018 WL 1010210, at *8.

> The wrongfulness of Defendants' acts--failing to properly dispose of industrial waste over many years--and the severity of harm RM has suffered--the near total collapse of its business-- further support concluding that Defendants owe a duty to businesses within the contamination zone . . . . Moreover, allowing RM's negligence claim to proceed will not open Defendants to "limitless exposure to potential suits," *532 Madison*, [96 N.Y.2d at 290, 727 N.Y.S.2d at 54], because there are a finite number of potential plaintiffs in the contamination zone. The fact that Defendants have not faced a torrent of claims from businesses in Hoosick Falls seeking lost profits undercuts their arguments to the contrary.

*Bacon I*, 2018 WL 1010210, at *8. "Defendants have a duty to those businesses within the zone of contamination that have suffered economic losses traceable to Defendants' breach." *Id*.

The district court also denied defendants' motion to dismiss the negligence claim of Bacon. It noted that although Bacon did not claim that he had

11

been deprived of potable water, he pleaded direct injury to his property, alleging that defendants' mishandling of PFOA at their manufacturing facility had caused PFOA to spread to and contaminate his property. *See id*. The court stated that "[t]his is a classic contamination case," *id*. (citing *Ivory v. International Business Machines Corp.*, 116 A.D.3d 121, 126-27, 130, 983 N.Y.S.2d 110, 114-15, 117 (3d Dep't 2014), and *Murphy v. Both*, 84 A.D.3d 761, 761-62, 922 N.Y.S.2d 483, 484-85 (2d Dep't 2011)), and concluded that "Defendants had a duty under New York law to take reasonable steps to prevent PFOA from entering Bacon's property. The contamination resulting from their alleged breach is clearly an injury to his property." *Bacon I*, 2018 WL 1010210, at *8.

The district court certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendants petitioned this Court for leave to appeal, and permission was granted.

## II. DISCUSSION

On appeal, defendants principally pursue their contention that *532 Madison* forecloses plaintiffs' negligence claims, arguing that both RM and Bacon seek damages for losses that are purely economic. For the reasons that follow, we agree with respect to RM but not as to Bacon.

A. *Bacon*

The amended complaint alleges generally that defendants "discharged PFOA into the environment through releases into the atmosphere" and "through discharges into the soil" (Am. Compl. ¶¶ 43, 45). The contamination of another person's property "through water and soil contamination" or through "air and vapor intrusion" is an "invasion" of the owner's "right of possession." *Ivory v. International Business Machines Corp.*, 116 A.D.3d at 129, 983 N.Y.S.2d at 116; *see, e.g., Murphy v. Both*, 84 A.D.3d at 761-62, 922 N.Y.2d at 484-85 (affirming denial of summary judgment on claim that the defendant's underground fuel tank negligently "contaminat[ed]" the plaintiff's "adjacent real property"). And under New York law, "[d]amages from the diminished market value of real property as a result of public fear of exposure to a potential health hazard constitute consequential damages." *Cottonaro v. Southtowns Industries, Inc.*, 213 A.D.2d 993, 993, 625 N.Y.S.2d 773, 774 (4th Dep't 1995).

The amended complaint does not make clear whether Bacon's 90-acre property, on which RM's buildings are located, is in the Village or in the adjacent Town of Hoosick. (*Compare* Am. Compl. ¶ 7 ("R.M. Bacon is a New York corporation

13

located at 510 South Street, Hoosick Falls, New York") and *id*. ¶ 8 ("Michael Bacon . . . resides at 669 South Street, Hoosick Falls, New York"), *with id*. ¶ 76 ("R.M. Bacon is located in the Town of Hoosick, immediately south of Hoosick Falls") *and id*. ¶ 112 ("Michael Bacon holds the title for the property where R.M. Bacon operates on South Street in the Town of Hoosick, including the surrounding 90+ acres").)  However, regardless of whether Bacon's property is in the Village or in the next town (or perhaps straddles the two), the amended complaint alleges that PFOA discharged by defendants is "presen[t] on [Bacon's] property," (*id*. ¶ 161; *see, e.g., id*. ¶ 44 (DEC, "based on testing it conducted, informed plaintiffs that measurable levels of PFOA exist on the 510 South Street property")).

Thus, while Bacon has requested only money damages specifically, rather than an order for testing or remediation, the injury he alleges is not purely economic; he seeks compensation for the physical invasion of his property.  Accordingly, we see no error in the district court's conclusion that the principle of *532 Madison* is inapposite to the claim of Bacon.  As he alleges physical contamination of his property, he is entitled to seek damages not only for that intrusion but also for the diminution in value of the property.  The motion to dismiss Bacon's negligence claim was properly denied.

14

## B. *RM*

RM, in contrast, is not alleged to have suffered any damage to its property. There is no allegation that it owns any real property. And while the amended complaint alludes to the "los[s]" of some of RM's "equipment" (Am. Compl. ¶ 168), there is no allegation that PFOA somehow destroyed or damaged RM's equipment. Rather, the amended complaint makes plain that the equipment referred to was sold by RM at auction, in an effort to reduce overhead expenses and secure liquidity (*see, e.g., id.* ¶¶ 102-108). That is not what New York law means by injury or damage to property.

Nor do the facts alleged in the amended complaint show RM's entitlement to pursue a negligence claim for property damage that does not entail injury or damage to its property. To state a claim for negligence under New York law, one must allege, *inter alia*, that the defendant owed a duty of care to the plaintiff. *See, e.g., 532 Madison*, 96 N.Y.2d at 289, 727 N.Y.S.2d at 53; *Vogel v. West Mountain Corp.*, 97 A.D.2d 46, 48, 470 N.Y.S.2d 475, 476 (3d Dep't 1983) ("[B]efore a defendant may be found liable for negligence, a duty must exist, the breach of which is the proximate cause of the plaintiff's injury. . . . The symmetry is clear: absent a duty, there is no breach and, without a breach, there is no liability.").

15

A duty may arise from a special relationship that requires the defendant to protect against the risk of harm to plaintiff . . . . Landowners, for example, have a duty to protect tenants, patrons and invitees from *foreseeable* harm caused by the criminal conduct of others while they are on the premises, because the special relationship puts them in the best position to protect against the risk . . . . *That duty, however, does not extend to members of the general public* . . . . Liability is in this way circumscribed, because *the special relationship defines the class of potential plaintiffs to whom the duty is owed*.

*532 Madison*, 96 N.Y.2d at 289, 727 N.Y.S.2d at 53-54 (emphases added). However, "to avoid exposing defendants to unlimited liability to an indeterminate class of persons conceivably injured by any negligence in a defendant's act," *id*., 727 N.Y.S.2d at 53, possibly imposing on an alleged tortfeasor "unlimited or insurer-like liability," *id*. at 288, 727 N.Y.S.2d at 53, the mere fact of "foreseeability of harm does not define duty," *id*. at 289, 727 N.Y.S.2d at 53.

> *Absent a duty* running *directly* to the injured person *there can be no liability in damages, however careless the conduct or foreseeable the harm*.

*Id*. (emphases added).

Noting that "[p]olicy-driven line-drawing is to an extent arbitrary," the *532 Madison* court concluded that a landowner does not have a duty to

> *an indeterminate group in the affected areas . . . [who] may have provable financial losses* directly traceable to the . . . collapses, with no

16

> satisfactory way geographically to distinguish among those who have suffered purely economic losses . . . . *In such circumstances, limiting the scope of defendants' duty to those who have, as a result of these events, suffered personal injury or property damage*--as historically courts have done--*affords a principled basis for reasonably apportioning liability.*

*Id*. at 291-92, 727 N.Y.S.2d at 55 (emphases added). Illustrating such an apportionment was the *532 Madison* Court's approving description of two Appellate Division decisions in actions that arose out of the same incident, an explosion at a chemical manufacturing plant. The explosion caused physical vibrations in and rained stones and debris onto one nearby factory, *see Dunlop Tire & Rubber Corp. v. FMC Corp.*, 53 A.D.2d 150, 151-52, 385 N.Y.S.2d 971, 972 (4th Dep't 1976) ("*Dunlop*"); it also caused the loss of electrical power both to the *Dunlop* premises and to a Chevrolet plant located one and one-half miles away, forcing both businesses to be temporarily closed. The explosion caused no physical damage to the Chevrolet plant, however, *see Beck v. FMC Corp.*, 53 A.D.2d 118, 119, 385 N.Y.S.2d 956, 957 (4th Dep't 1976) ("*Beck*"), *aff'd*, 42 N.Y.2d 1027, 398 N.Y.S.2d 1011 (1977); the plaintiffs in *Beck* were Chevrolet plant employees who sought damages for lost wages caused by the plant closure. The *Dunlop* plaintiff was allowed to recover not only for the physical damage to its property but also--"subject to the general rule requiring proof of the

17

extent of the damage and the causal relationship between the negligence and the damage"--for its economic loss. *532 Madison*, 96 N.Y.2d at 290, 727 N.Y.S.2d at 54. "The *Beck* plaintiffs, by contrast, could not state a cause of action, because, *to extend a duty* to [the] defendant . . . would, like the rippling of the waters, [go] far beyond the zone of danger of the explosion, to everyone who suffered purely economic loss." *Id*., 727 N.Y.S.2d at 54-55 (internal quotation marks omitted) (emphasis added).

On this reasoning, the New York Court of Appeals concluded that the *532 Madison* "plaintiffs' negligence claims based on economic loss alone" must be rejected as "beyond the scope of the duty owed them." *Id*. at 292, 727 N.Y.S.2d at 55. *See also Cedar & Washington Associates, LLC v. Bovis Lend Lease LMB, Inc.*, 95 A.D.3d 448, 449, 944 N.Y.S.2d 47, 48 (1st Dep't 2012) (hotel owner, suing persons who caused a nearby fire that was not alleged to have caused the plaintiff any personal injury or property damage, could not recover damages for "mere[] . . . economic loss"); *Roundabout Theatre Co. v. Tishman Realty & Construction Co.*, 302 A.D.2d 272, 272-73, 756 N.Y.S.2d 12, 13 (1st Dep't 2003) (theater owner could not recover for income lost due to temporary street closures occasioned by collapse of the defendants' tower, because "defendants' duty of care extended only to those who, as a result of this

18

construction disaster, suffered personal injury or property damage, and not to those who, like plaintiff, suffered only economic loss").

In light of the holding and reasoning of *532 Madison* and cases following it, we see no principled difference between RM and other plaintiffs suing only for purely economic losses, whose claims the New York courts have found not cognizable because the defendants owed the plaintiffs no duty.

We disagree with the district court's assessment that "while the shopkeepers in *532 Madison* were only indirectly impacted by the defendants' conduct, RM has been *directly* impacted by the contamination." *Bacon I*, 2018 WL 1010210, at *8 (emphasis added). First, the amended complaint contains no plausible allegation that PFOA has impacted RM directly. Although the court correctly notes the allegation that "PFOA has spread from [defendants'] facility to *the property* on which [RM] *operates*," *id*. (emphases added), that property either belongs to residents of the Village (assuming the court was referring to the locations at which RM physically performs its services), or belongs to Bacon (if the court was referring more metaphysically to RM's home base). And while the *532 Madison* Court indicated that a property owner could be directly injured by his neighbor--stating that "[a] landowner who engages in activities that may cause injury to persons on adjoining

19

premises surely owes those persons a duty to take reasonable precautions to avoid injuring them"--the Court added, "[w]e have never held, however, that a landowner owes a duty to protect an entire urban neighborhood against purely economic losses." 96 N.Y.2d at 290, 727 N.Y.S.2d at 54.  As discussed above, there is no allegation in the amended complaint that RM owned any real property and no plausible allegation that any property owned by RM was invaded, injured, or damaged by PFOA.

Second, there are both similarities and differences between RM and the shopkeepers in *532 Madison*, none of which we view as supporting the district court's conclusion that *532 Madison* does not foreclose RM's claim.  The similarities include the fact that both RM and the shopkeepers lost business from would-be customers-- although the reasons for their losses were conceptually different.  The shopkeepers' customers could not reach the shops because of municipally ordered street and sidewalk closures--"in the interest of public safety," *id*. at 292, 727 N.Y.S.2d at 56-- which denied them physical access; RM's customers are alleged to be unable to hire RM because banks are declining to lend money for renovation of residences in the Village.  The fact that business from would-be customers has been prevented by optional economic decisions of the banks makes RM's losses of income at least as indirect as those of the physically isolated *532 Madison* shopkeepers.

Third, we are unpersuaded by the district court's suggestion that "[u]nlike the plaintiffs in *532 Madison*," RM should be allowed to recover for its purely economic losses because "there is a reasonable method [in the present case] to 'geographically . . . distinguish among those who have suffered purely economic losses,'" *Bacon I*, 2018 WL 1010210, at *8 (quoting *532 Madison*, 96 N.Y.2d at 291, 727 N.Y.S.2d at 55), for we do not see that the district court identified any such method. The district court merely stated that "the plaintiffs in *532 Madison* . . . were outside the immediate collapse area," whereas "RM operates within the contamination zone," *Bacon I*, 2018 WL 1010210, at *8. We are unpersuaded by the distinction for several reasons. For example, while it is true that the *532 Madison* plaintiffs did not allege that their premises were invaded by dust or debris from the building collapses, it is also true that in the present case there is no allegation that anything belonging to RM was contaminated by PFOA. In addition, the district court's reference to the *532 Madison* "immediate collapse area" apparently invites a focus narrowed to just the collapsed building itself--given that the shop of one of the *532 Madison* plaintiffs was located only one-half block away from the building that collapsed, *see 532 Madison*, 96 N.Y.2d at 286, 727 N.Y.S.2d at 51. However, to compare the PFOA "contamination zone" only with the collapsed building itself is fallacious, given that the income losses

21

complained of in *532 Madison* resulted from customers being kept out of the multi-block area surrounding the collapsed building. Just as RM operated with the contamination zone, the *532 Madison* shopkeepers operated within the exclusion zone.

Further, just as entities who may have suffered purely economic losses could be geographically remote from Madison Avenue or Times Square, entities whose purely economic interests may be detrimentally affected by the fact of PFOA contamination in the Village could be located anywhere. Locally they could include, for example, plumbers who are no longer called upon to repair residential water pipes, and local restaurants that may be forced either to accept diminished profits because of the need to provide patrons with bottled water and the need to cook with bottled water--and possibly a need to use bottled water for dishwashing--or to lose customers if they raise their prices on account of bottled-water expense. Such economically injured entities could also include out-of-state creditors of work-deprived plumbers; or foreign purveyors of food to local restaurants that experience business declines or that are forced to cease business; or banks that, because of the PFOA-contamination-induced diminished Village property values, are unable to obtain full repayment of mortgage-backed loans that go into default. We see no valid "geographic[]" basis for allowing RM to pursue the claim for its purely economic

22

losses when such a claim was foreclosed to the *532 Madison* plaintiff whose shop was merely a half-block from the building that collapsed.

Finally, basic principles of New York law contradict the district court's view that RM is entitled to pursue a negligence claim for purely economic losses because of "*[t]he wrongfulness of Defendants' acts*--failing to properly dispose of industrial waste over many years--and *the severity of harm* RM has suffered--the near total collapse of its business."  *Bacon I*, 2018 WL 1010210, at *8 (emphases added). "*Absent a duty* running *directly* to the injured person there can be *no liability in damages, however careless the conduct*," *532 Madison*, 96 N.Y.2d at 289, 727 N.Y.S.2d at 53 (emphases added); and absent such a duty, a negligence action cannot be maintained even for loss of human life, *see, e.g., Garrett v. Holiday Inns, Inc.*, 86 A.D.2d 469, 470, 450 N.Y.S.2d 619, 620 (4th Dep't 1982) (dismissing negligence claims against a town for deaths of guests in motel fire, because "the town owed no duty to them").

We conclude that RM's negligence claim to recover its purely economic damages should have been dismissed.

CONCLUSION

We have considered all of the parties' arguments in support of their respective positions on this appeal and, except to the extent indicated above, have found them to be without merit. We affirm so much of the district court's order as denied defendants' motion to dismiss the negligence claim of Bacon; the denial of defendants' motion to dismiss the negligence claim of RM is reversed.