17-3941-cv(L)
Benoit v. Saint-Gobain Performance Plastics Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2018

(Argued:  April 17, 2019                    Decided:  May 18, 2020)

Docket Nos. 17-3941-cv(L), 17-3943(C), 17-3944(C),
17-3945(C), 17,-3946(C), 17-3947(C), 17-3948(C), 17-3949(C),
17-3950(C), 17-3952(C), 17-3953(C), 17-3954(C), 17-3955(C),
17-3956(C), 17-3957(C), 17-3958(C)[*]

_____

THELMA BENOIT, DAVID BENOIT, CYNTHIA BODENSTAB,
MARY SCHMIGEL, MICHAEL SCHMIGEL, BYRAN SCHROM,
KARY SCHROM, KEVIN SCHROM, NICKOLAS SCHROM,
MARGARET SARGOOD, LISA TIFFT, RUTH TIFFT, TRAVIS
CONQUEST, BRETT FERRARO, STEVEN CHURCH, SHARON
CHURCH, MARTHA CAMPBELL, KENNETH CROSS II and CIELO
CROSS, individually and as parent and natural guardian of R.D.C.,
SUZANNE I. BAKER, ARNOLD BULLINGER, individually and as
executor of the estate of EDWARD FROMMER, deceased, JANET
VAN DER KAR, DOUGLAS SMITH, BEVERLY WHITE, ROGER
WHITE, CHRISTINE JENSEN, JAMES JENSEN, PATRICIA
ORMSBEE, DOUGLAS HOLMSTEDT, DEBRA HOLMSTEDT,

---

[*]    These matters were consolidated for appeal, and for oral argument
with the appeals in *R.M. Bacon, LLC v. Saint-Gobain Performance
Plastics Corp.*, No. 18-2018, and *Baker v. Saint-Gobain Performance
Plastics Corp.*, No. 17-3942, which are resolved today in separate
decisions.

RANDALL PUTNAM, CHERYL RIOS, ROBERT RIOS,

*Plaintiffs-Appellees,*

- v. -

SAINT-GOBAIN PERFORMANCE PLASTICS CORP., HONEYWELL
INTERNATIONAL INC., f/k/a ALLIED-SIGNAL INC.,

*Defendants-Appellants.[**]*

_____

Before:  KEARSE, POOLER, and CARNEY, *Circuit Judges.*

Defendants, the owner and a past owner of a manufacturing facility using a chemical, perfluorooctanoic acid ("PFOA"), and disposing of that chemical in a manner that contaminated the water supply in the Village of Hoosick Falls, New York, appeal pursuant to 28 U.S.C. § 1292(b) from so much of an order of the United States District Court for the Northern District of New York, Lawrence E. Kahn, *Judge*, as denied defendants' motion under Fed. R. Civ. P. 12(b)(6), in 16 temporarily consolidated actions, to dismiss plaintiff Village residents' (1) claims of negligence and strict liability for (a) personal injury in the nature of accumulation of PFOA in the blood, thereby increasing risks of various types of illness, and (b) damage to owned property; (2) claims of trespass and nuisance for contamination of water in privately

_____

[**]    The Clerk of Court is directed to amend the official caption to
        conform with the above.

2

owned wells; and (3) requests for the costs of medical monitoring as consequential damage for (a) personal injury or (b) damage to property, *see Benoit v. Saint-Gobain Performance Plastics Corp.*, No. 16-CV-930, etc., 2017 WL 3316132 (Aug. 2, 2017). Defendants contend principally that these rulings are foreclosed by *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439 (2013), and *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*, 96 N.Y.2d 280 (2001). We conclude that the court properly denied defendants' motion to dismiss the claims of injury to persons or property, and for medical monitoring with respect to personal injury. As to the ruling that costs of medical monitoring can be awarded on the basis solely of injury to property, we conclude that because plaintiffs request various types of relief in addition to medical monitoring, the ruling that medical monitoring is available relief for property damage is not one that meets the criteria for immediate review under 28 U.S.C. § 1292(b); we thus dismiss, as improvidently allowed, so much of the appeal as seeks review of that part of the district court's order.

Affirmed in part; dismissed in part.

STEPHEN G. SCHWARZ, Rochester, New York (Faraci Lange, Rochester, New York; Hunter J. Shkolnik, Tate J. Kunkle, Napoli Shkolnik, Melville, New York, on the brief), *for Plaintiffs-Appellees*.

3

SHEILA L. BIRNBAUM, New York, New York (Mark S. Cheffo, Bert L. Wolff, Lincoln Davis Wilson, Quinn Emanuel Urquhart & Sullivan, New York, New York; Dechert, New York, New York, on briefs), *for Defendant-Appellant Saint-Gobain Performance Plastics Corp.*

ARNOLD & PORTER KAYE SCHOLER, Washington, D.C. (Michael D. Daneker, Elissa J. Preheim, Washington, D.C.; Jennifer R. Kwapisz, Arnold & Porter Kaye Scholer, New York, New York, of counsel), *for Defendant-Appellant Honeywell International Inc.*

Environmental & Natural Resources Law Clinic, Vermont Law School, South Royalton, Vermont (Kenneth J. Rumelt, of counsel) and EarthJustice, New York, New York (Eve C. Gartner, Suzanne Novak, of counsel), *filed a brief for Amici Curiae Alliance of Nurses for Healthy Environments, American Academy of Pediatrics - New York State Chapters 1, 2 and 3, Capital Area Urban League, Center for Environmental Health, Clean and Healthy New York, Inc., Clean Water Action, Connecticut Coalition for Environmental Justice, Great Neck Breast Cancer Coalition, Huntington Breast Cancer Action, Vermont Natural Resources Council, Vermont Public Interest Research Group, Hope Grosse, and Joanne Stanton, in support of Plaintiffs-Appellees.*

Reed Smith, New York, New York (James M. Beck, Philadelphia, Pennsylvania; Daniel K. Winters, New York, New York, of counsel) *filed a brief for Amici Curiae Product Liability Advisory Council, Inc. & National Association of Manufacturers, in support of Defendants-Appellants.*

4

Alston & Bird, Charlotte, North Carolina (David Venderbush, New York, New York; Brian D. Boone, Charlotte, North Carolina, of counsel), *filed a brief for Amici Curiae Chamber of Commerce of the United States of America, Pharmaceutical Research and Manufacturers of America, and The Business Council of New York State, Inc., in support of Defendants-Appellants.*

KEARSE, *Circuit Judge*:

Defendants Saint-Gobain Performance Plastics Corp. ("Saint-Gobain") and Honeywell International Inc., f/k/a Allied-Signal Inc. ("Honeywell"), respectively the owner and a past owner of a manufacturing facility using perfluorooctanoic acid ("PFOA") and disposing of that chemical in a manner that contaminated the water supply in the Village of Hoosick Falls, New York (the "Village"), appeal pursuant to 28 U.S.C. § 1292(b) from so much of an order of the United States District Court for the Northern District of New York, Lawrence E. Kahn, *Judge*, as denied defendants' motion under Fed. R. Civ. P. 12(b)(6) to dismiss claims in these 16 actions by plaintiffs Village residents Thelma Benoit, *et al.*, (1) of negligence and strict liability for (a) personal injury in the nature of accumulation of PFOA in the blood, thereby increasing risks of various types of illness, and (b) damage to owned property; (2) of trespass and nuisance for contamination of water in privately owned wells; and (3)

5

for the costs of medical monitoring as consequential damages for (a) personal injury or (b) damage to property. Defendants contend principally that these rulings are foreclosed by *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 982 N.Y.S.2d 40 (2013) ("*Caronia*" or "*Caronia II*"), and *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*, 96 N.Y.2d 280, 727 N.Y.S.2d 49 (2001) ("*532 Madison*"). For the reasons that follow, we conclude that the court properly denied defendants' motion to dismiss the claims of injury to persons or property, and for medical monitoring with respect to personal injury. As to the ruling that costs of medical monitoring can be awarded on the basis solely of injury to property, we conclude that, as plaintiffs have requested a variety of relief in addition to medical monitoring, the ruling that medical monitoring is available relief for property damage does not meet the criteria for immediate review under 28 U.S.C. § 1292(b); we thus dismiss, as improvidently allowed, so much of the appeal as seeks review of that part of the district court's order.

## I. BACKGROUND

In the present 16 diversity actions, which have been consolidated for this appeal, plaintiffs are residents of the Village who have asserted claims against

defendants for the effects of PFOA on their health and/or property. Defendants sought dismissal of each action for failure to state a claim on which relief can be granted, contending that plaintiffs' claims are foreclosed by various principles of New York law. As the parties agreed that each action raises essentially similar issues, the district court consolidated the cases for purposes of entertaining and deciding a consolidated Rule 12(b)(6) motion by defendants. *See Benoit v. Saint-Gobain Performance Plastics Corp.*, No. 16-CV-930, etc., 2017 WL 3316132 (Aug. 2, 2017) ("*Benoit I*").

The factual allegations in plaintiffs' complaints, taken as true for purposes of considering a Rule 12(b)(6) motion, are more fully set forth in the district court's opinion in *Benoit I*, familiarity with which is assumed. We summarize them briefly here.

A.  *PFOA Contamination in Hoosick Falls*

PFOA is a chemical used in making household and commercial products that resist heat and chemical reactions--such as teflon-coated cookware--and fabrics that repel oil, stains, grease, and water. Since at least as early as 1986, a manufacturing facility in the Village has used PFOA to create such products (the

"Facility"). For a decade the Facility was owned by Honeywell; for the last two decades it has been owned by Saint-Gobain.

Production activity at the Facility, such as applying a solution containing PFOA to fabrics in large trays and emptying leftover solution into floor drains, caused PFOA to enter the ground. PFOA thus disposed of at the Facility ultimately moved through the soil into Village groundwater and has contaminated the drinking water-- both for the 95% of the Village's approximately 4,500 residents who acquire their water from municipal wells and for others who receive their water from privately owned wells.

PFOA can persist in the environment, particularly in water, for many years, and it is readily absorbed after consumption, accumulating in, *inter alia*, the blood stream.

> [S]tudies show associations between increased PFOA levels in blood and an increased risk of[, *inter alia*,] . . . effects on the liver, the immune system, high cholesterol levels, . . . high blood pressure, changes in thyroid hormone, ulcerative colitis . . . , pre-eclampsia . . . , and kidney and testicular cancer. . . . These health conditions can arise months or years after exposure to PFOA.

*Benoit I*, 2017 WL 3316132, at *2 (internal quotation marks and citation omitted).

In 2014 and 2015, the Village conducted numerous tests on its water supply. The tests detected PFOA levels in municipal wells of up to 662 parts per trillion ("PPT"), in private wells of up to 412 PPT, and in groundwater near the Facility of up to 18,000 PPT. In late 2015, the United States Environmental Protection Agency ("EPA") recommended that an alternative water source be provided to Village residents until PFOA levels subsided, and it advised that residents not drink, or cook with, the water. In 2016, the EPA issued an advisory indicating that health effects may result from exposure to concentrations of PFOA in drinking water above 70 PPT.

In 2015, Saint-Gobain had entered into an agreement with the Village to provide free bottled water to residents and to fund a filtration system at the municipal water treatment plant. In mid-2016, after New York State ("State") had investigated and placed the Facility on the State Superfund list as a site presenting a significant threat to public health--and had asked the EPA to designate the Facility as a federal Superfund site--defendants entered into consent orders with the State, agreeing to fund the installation and maintenance of filtration systems for the municipal water supply and provide residents with bottled water until a full-capacity filtration system was installed.

9

B. *The Present Actions*

Plaintiffs' actions were commenced in the second half of 2016, asserting claims of negligence, strict liability, trespass, and nuisance for harm to their persons and/or properties as a result of defendants' contaminating the Village's water with dangerous levels of PFOA and defendants' failure to notify plaintiffs of the contamination in a timely manner. As to personal injury, a majority of the plaintiffs principally allege that their exposure to PFOA has caused elevated levels of PFOA in their blood, in turn causing them increased risk of several serious health problems.

With respect to the claims of property damage, plaintiffs assert that the use of PFOA in manufacturing constituted an ultra-hazardous activity for which defendants are strictly liable, and that defendants' negligence caused PFOA to trespass onto their land. Plaintiffs allege that the contamination of potable drinking water at their homes constitutes substantial interference with their use and enjoyment of their property. They also allege that the defendants' contamination of the Hoosick Falls public aquifer and the private wells in the Village (a) forces, or will force, plaintiffs to expend moneys to test, monitor, and remediate the effects of the PFOA, and (b) has caused the value of their property to be significantly decreased.

10

As relief, all of the plaintiffs' complaints request, among other things,

> A.  a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs.
>
> B. an order requiring that Defendants implement a testing and monitoring protocol to test Plaintiffs' property and its drinking water, and to implement appropriate remedial measures.
>
> C. an order establishing a medical monitoring protocol for Plaintiffs.
>
> D.  an award to Plaintiffs of general, compensatory, exemplary, consequential, nominal, and punitive damages . . . .

(*E.g.*, Benoit Complaint, WHEREFORE ¶¶ A-D.)

1. *Defendants' Motion To Dismiss*

As indicated above, the district court consolidated the complaints in plaintiffs' 16 actions, permitting defendants to file a consolidated Rule 12(b)(6) motion to dismiss.  Defendants' motion argued that plaintiffs failed to allege either personal or property injuries that are cognizable under New York law.  As to personal injury, defendants contended principally--to the extent relevant to these appeals--that *Caronia*, 22 N.Y.3d 439, 982 N.Y.S.2d 40, bars recovery in tort for alleged "threat[s] of future harm . . . . absent any evidence of *present physical injury* or damage to property."

11

(Memorandum in Support of Defendants' Joint Consolidated Motion To Dismiss the Individual Plaintiffs' Claims ("Def. Mem.") at 10 (internal quotation marks omitted) (emphasis in Def. Mem.).) Defendants argued that mere accumulation of elevated levels of PFOA in the blood did not constitute physical injury and that the personal injury claims of those plaintiffs who could not allege more than such an accumulation should be dismissed.

As to plaintiffs' claims of property damage, defendants argued principally that, in the absence of physical damage, *532 Madison*, 96 N.Y.2d 280, 727 N.Y.S.2d 49, precludes recovery in tort for harm that is exclusively economic, and that because "groundwater is not private property," plaintiffs could not base property damage claims on "alleged injury to groundwater" (Def. Mem. at 9). Defendants also urged dismissal of all property claims of plaintiffs who rented their homes, on the theory that they lacked ownership interest, and dismissal of all claims of nuisance, on the theory that private nuisance is by definition a tort that threatens one or a few persons, not one that impacts the whole community.

2. *The District Court's Decision*

The district court granted defendants' motion in part and denied it in part. Only the denials are at issue on the present appeals.

12

As a general matter, the court rejected defendants' interpretation of *Caronia* as requiring personal injury claimants to allege "symptoms or disease," and concluded instead that *Caronia* permits such claimants to allege injury in the form of "accumulation of a toxic substance." *Benoit I*, 2017 WL 3316132, at \*9-\*10. Accordingly, as to plaintiffs who do not allege that they have symptoms or disease, the court denied defendants' motion to dismiss the personal injury claims of those who claim elevated blood levels of PFOA (referring to them as the "Accumulation Plaintiffs"). *Id*. at \*10.

The court also ruled that even if such accumulation were not enough to constitute personal injury, *Caronia* allows claimants to pursue medical monitoring costs as "consequential damages for a tort alleging injury to property." *Id*. (internal quotation marks omitted). This ruling also preserved the medical monitoring claims of two plaintiffs who did not claim disease, or symptoms, or blood levels with elevated PFOA, but who were property owners claiming injury to their property.

As to defendants' contention that plaintiffs' claims of property damage were not cognizable because groundwater is not private property, the court denied defendants' motion to the extent that it sought dismissal of claims asserted by plaintiffs who are not merely renters but property owners. The court observed, *inter*

*alia*, that the authority cited by defendants involved neither a claim of negligence nor injury to the claimants' drinking water, *see id*. at \*7. The court also stated that even under defendants' reading of *532 Madison* as requiring some damage beyond groundwater contamination or home-devaluation, those plaintiffs who owned property sought damages for "loss of their potable water supply," and that is "an injury that is not fairly categorized as purely economic in nature." *Benoit I*, 2017 WL 3316132, at \*9 (internal quotation marks omitted). The court ruled that owners also stated viable claims for "the cost of remediating the contamination." *Id*.

The court also declined to dismiss the claims of owners of private wells for trespass and nuisance. As to trespass, it noted that although defendants argued that such an action could not be based on injury to groundwater because groundwater is not private property, the cases on which they relied for that proposition did not involve owners of private wells. *See id*. at \*10-\*11. As to claims of nuisance, the court ruled that--while contamination of the Village wells, from which some 95% of the residents received their water, was so widespread as to constitute not a private nuisance but a public nuisance for which only the Village, not individuals, had standing to sue--those plaintiffs who owned private wells could maintain actions for private nuisance, as the contamination imposed a special burden on them. *See id*. at \*11-\*12.

The court certified its decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we granted defendants' timely petition for leave to appeal.

## II.  DISCUSSION

On appeal, defendants contend principally that New York tort law (1) precludes an action for personal injury based solely on allegations of elevated blood levels of PFOA without allegation of disease or symptoms of disease (*i.e.*, claims of asymptomatic Accumulation Plaintiffs); (2) precludes an award of the costs of medical monitoring as consequential damages (a) for asymptomatic Accumulation Plaintiffs, or (b) for injury merely to property; (3) precludes property damage claims for negligence, strict liability, or trespass based solely on contamination of groundwater and/or alleged loss in the economic value of residential homes; and (4) precludes nuisance claims by individuals for contamination of their owned wells, as the water supply was contaminated for the entire community.  For the reasons that follow, we conclude that the district court properly rejected these contentions with respect to all but that challenging the availability of the costs of medical monitoring as consequential damages for injury to property; as to the latter, we conclude that it

is not an issue that meets the criteria for immediate review under 28 U.S.C. § 1292(b), and we thus do not resolve it.  (*See* Part II.D. below.)

A. *Whether Elevated PFOA Level in the Blood Suffices To Ground an Action for Personal Injury and a Request for the Costs of Medical Monitoring*

Under New York law, in order to recover in either negligence or strict liability, claimants must prove, *inter alia*, that their persons or property have been injured.  *See, e.g., Akins v. Glens Falls City School District*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648 (1981) (personal injury, negligence); *Kimbar v. Estis*, 1 N.Y.2d 399, 403, 153 N.Y.S.2d 197, 199 (1956) (same); *Voss v. Black & Decker Manufacturing Co.*, 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 401-02 (1983) (personal injury, strict liability); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 725 F.3d 65, 117 (2d Cir. 2013) ("*MTBE*") (property damage, negligence); *see generally id*. at 98, 107-09 (property damage and strict liability).

The most recent discussion, by New York's highest court, of tort principles relevant to the personal injury claims in these actions is the New York Court of Appeals' 2013 decision in *Caronia II*, 22 N.Y.3d at 446, 982 N.Y.S.2d at 43.  The case was brought in federal court by inveterate cigarette smokers who stated that the "Plaintiffs do not allege personal injury in this case," *Caronia v. Philip Morris USA, Inc.*,

16

715 F.3d 417, 428 (2d Cir. 2013) ("*Caronia I*") (internal quotation marks omitted), and sought purely equitable relief in the form of a judgment requiring the cigarette manufacturer to fund a court-supervised program of medical surveillance for the early detection of lung cancer. On appeal, the plaintiffs thus urged us to conclude that New York law permitted an independent equitable action for medical monitoring. Unable to discern any controlling precedent in the New York cases, *see*, *e.g.*, *id*. at 434-37, we certified--insofar as is relevant here--the following question to the New York Court of Appeals:

> Under New York law, may a current or former longtime heavy smoker who has not been diagnosed with a smoking-related disease, and who is not under investigation by a physician for such a suspected disease, pursue an independent equitable cause of action for medical monitoring for such a disease?

*Id*. at 450.

The New York Court of Appeals answered this certified question in the negative. Noting that the "Plaintiffs do not claim to have suffered physical injury or damage to property," and that under New York law "[a] threat of future harm is insufficient to impose liability against a defendant in a tort context," *Caronia II*, 22 N.Y.3d at 446, 982 N.Y.S.2d at 43, the Court considered whether judicial "recogni[tion of] a new tort, namely, an equitable medical monitoring cause of action," absent

17

physical injury, would be consistent with existing New York law, *id*. at 447, 982 N.Y.S.2d at 43. In so considering, the Court discussed several decisions of New York's intermediate appellate courts, focusing principally on *Askey v. Occidental Chemical Corp.*, 102 A.D.2d 130, 477 N.Y.S.2d 242 (4th Dep't 1984) ("*Askey*"), and *Abusio v. Consolidated Edison Co.*, 238 A.D.2d 454, 656 N.Y.S.2d 371 (2d Dep't 1997) ("*Abusio*"), *lv. denied*, 90 N.Y.2d 806 (1997).

In *Askey*, in addressing the toxic tort claims of those plaintiffs who alleged injuries "characterized as" not "manifest" but "latent," *i.e.*, "injuries which have not surfaced but which may afflict them in the future," 102 A.D.2d at 132-33, 477 N.Y.S.2d at 245, the Appellate Division had stated that

> "damages resulting from the enhanced risk of cancer and the threat of future harm not yet realized are *not compensable in a tort action* . . . , [but that] there is a basis in law to sustain a claim for medical monitoring as an element of *consequential damage*" . . . .

*Caronia II*, 22 N.Y.3d at 447, 982 N.Y.S.2d at 44 (quoting *Askey*, 102 A.D.2d at 135, 477 N.Y.S.2d at 246 (emphases in *Caronia II*)); *see also Askey*, 102 A.D.2d at 137, 477 N.Y.S.2d at 247 (stating that the plaintiffs exposed to landfill toxins had "an increased risk of invisible genetic damage and a present cause of action for their injury," and could recover "'reasonably anticipated' consequential damages," including medical

monitoring, so long as they could "establish with a reasonable degree of medical certainty that such expenditures [were] 'reasonably anticipated' to be incurred by reason of their exposure").

However, the *Caronia II* Court pointed out that *Askey* had derived its rationale from the Court of Appeals' 1936 decision in *Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 200 N.E. 824 (1936) ("*Schmidt*"); and in *Schmidt*, the issue before the court was the date on which the toxic tort cause of action accrued. *See Caronia II*, 22 N.Y.3d at 447, 982 N.Y.S.2d at 44. The *Caronia II* Court pointed out that

> [e]ven in *Schmidt*, . . . this Court required *some injury or damage* to the plaintiff before he could recover. Having concluded that the injury or damage occurred at the time of "invasion" of the plaintiff's "personal or property rights," we addressed the issue of damages, holding that "[c]onsequential damages may flow later from an injury too slight to be noticed at the time it is inflicted. No new cause of action accrues when such consequential damages arise. *So far as consequential damages may be reasonably anticipated*, they may be included in a recovery *for the original injury*, though even at the time of the trial they may not yet exist" . . . .

*Id*. (quoting *Schmidt*, 270 N.Y. at 300-01, 200 N.E. at 827 (first emphasis added; subsequent emphases in *Caronia II*)).

The *Caronia II* Court noted that *Askey* and *Schmidt* were decided before the 1986 enactment of N.Y. C.P.L.R. § 214-c, which makes specific provisions as to the

19

time at which the statute of limitations would begin to run on a personal injury action for damages caused by the latent effects of exposure to harmful substances:

> The accrual rule set forth in *Schmidt*, and referenced in *Askey*, was replaced by CPLR 214-c, which requires a plaintiff to initiate a cause of action for personal injury damages caused by the *latent effects* of exposure to harmful substances within three years from the date the injury was *discovered* or could have been discovered "through the exercise of reasonable diligence."

> Neither *Schmidt* nor *Askey* questioned this State's long-held physical harm requirement; *rather, they merely accepted, for accrual purposes, that the injury accrued at the time of exposure*. In light of section 214-c's enactment in 1986 (well after *Askey* and *Schmidt*), the *Askey* court's holding that persons who are exposed to toxins may recover all "'reasonably anticipated' consequential damages," . . . must be viewed in its proper context. Given that the injuries in *Askey* and *Schmidt* were deemed (for accrual purposes) to have been sustained at the time of *exposure*, it is understandable why the Courts in those cases would have concluded that any and all damages flowing from those "injuries," including damages for medical monitoring, would be potentially recoverable as consequential damages.

*Caronia II*, 22 N.Y.3d at 448, 982 N.Y.S.2d at 44-45 (last emphasis in original; other emphases added).

The Court noted that in cases decided since 214-c's enactment,

> [t]he Appellate Divisions have consistently found that *medical monitoring* is an element of damages that *may be recovered only after a physical injury has been proven, i.e.,* that it is a form of remedy for an *existing* tort. *For instance*, in *Abusio v Consolidated*

20

*Edison Co. of N.Y.* (238 AD2d 454, 656 NYS2d 371 [2d Dept 1997], *lv denied* 90 NY2d 806, 686 NE2d 1363, 664 NYS2d 268 [1997]), where the plaintiffs brought a negligence cause of action arising out of exposure to toxins, the Court concluded that the trial court *properly set aside the damage awards for . . . medical monitoring*, holding that although *plaintiffs* established that they were exposed to toxins, they failed to establish that they had a "rational basis" for their fear of contracting the disease, i.e., they *failed to establish* a "*clinically demonstrable presence of [toxins] in the plaintiff's body, or some* indication of [toxin]-induced disease, i.e., *some physical manifestation of [toxin] contamination*" (*id*. at 454-455).

*Caronia II*, 22 N.Y.3d at 448-49, 982 N.Y.S.2d at 45 ("existing" emphasized in original; other emphases ours).

*Caronia II* stated, with apparent approval, that "*[c]ourts have followed the test enunciated in Abusio* in a number of cases where medical monitoring was sought as an element of damages," *id*. at 449, 982 N.Y.S.2d at 45 (emphasis added) (citing cases); *see id*. ("in order to obtain medical monitoring damages, plaintiff must establish 'clinically demonstrable presence' of toxins in the body or evidence of toxin-induced disease" (quoting *Allen v. General Electric Co.*, 32 A.D.3d 1163, 1165, 821 N.Y.S.2d 692, 694 (4th Dep't 2006))).  However, the *Caronia II* Court also noted that in each of the cases it cited, "the plaintiffs alleged either personal injury or property damage or both," *id*.; and it cautioned that "[t]o the extent that any of these, or other, cases can be read as recognizing *an independent* cause of action for medical monitoring absent

21

allegation of any physical injury or property damage, they should not be followed," *id*. at 449 n.2, 982 N.Y.S.2d at 45 n.2 (emphasis added).

In sum, the *Caronia II* Court thus answered in the negative this Court's certified question as to whether New York law recognizes an action for medical monitoring independently of the presence of a traditionally recognized tort cause of action. Given its discussion in reaching that conclusion, we interpret *Caronia II*'s recounting of the general New York tort law principles, together with its apparent approval of the test enunciated in *Abusio*--"*clinically demonstrable presence of [toxins] in the plaintiff's body, or* some indication of [toxin]-induced disease, i.e., *some physical manifestation of [toxin] contamination*"--to mean (a) that an action for personal injury cannot be maintained "*absent* allegation of *any* physical injury"; (b) that it is, however, sufficient to allege "*some* injury"; and (c) that to meet the requirement to plead "some" physical injury, it is sufficient to allege that "in the plaintiff's body" there is either a "*clinically demonstrable presence of toxins*" "***or** some physical manifestation of toxin contamination*." (All emphases ours.) We understand the word "clinical" in this context to refer to phenomena that are observable. *See Webster's Third New International Dictionary* 423 (2002) (defining "clinical" as, *inter alia*, "involving or depending on direct observation . . ." or "observable by clinical inspection"); *see also*

22

*id.* at 1793 (defining "present" as, *inter alia*, "now existing or in progress"); *id.* (illustrating "presence" as, *e.g.*, "the presence of free nitrogen bubbles in the body tissues").

We conclude that under *Caronia II*, allegations of the physical manifestation of or clinically demonstrable presence of toxins in the plaintiff's body are sufficient to ground a claim for personal injury and that for such a claim, if proven, the plaintiff may be awarded, as consequential damages for such injury, the costs of medical monitoring.

In the present case, as set out in Parts I.A. and B. above, the complaints include the following allegations. PFOA is a toxic substance; studies show associations between increased PFOA levels in the blood and numerous health problems. The EPA issued an advisory indicating that drinking water having concentrations of PFOA higher than 70 PPT may be harmful to one's health. The Village's testing of its water in 2014 and 2015 revealed PFOA levels from 412 PPT to 18,000 PPT. The EPA advised Village residents not to drink or even cook with water from the Village's aquifer. Not having been timely warned by defendants of the contamination of the Village's groundwater by PFOA, most of the plaintiffs in these appeals have accumulated elevated levels of PFOA in their blood. With reasonable

23

inferences being drawn in favor of plaintiffs, the allegation that their blood shows PFOA levels that are "elevated" also indicates that the PFOA is present to a degree that is measurable. The observable and measurable presence of that toxin in the blood clearly passes the *Abusio* threshold for what constitutes personal injury sufficient under New York law to ground a tort cause of action.

Accordingly, the district court correctly ruled that the Accumulation Plaintiffs sufficiently alleged personal injury under New York law to permit them to request the costs of medical monitoring. Defendants' Rule 12(b)(6) motion to dismiss their personal injury claims was properly denied.

B. *Whether an Action for Property Damage--Based on Negligence, Strict Liability, or Trespass--May Be Maintained for Contamination of Land or Groundwater*

Defendants contend that the property damage claims by plaintiff property owners alleging negligence, strict liability, and trespass should have been dismissed, arguing that claims of injury to groundwater are not legally cognizable because groundwater is a public resource rather than private property. They also contend, relying on *532 Madison*, that claims that the plaintiffs' homes have decreased in value concern purely economic losses that are unrecoverable. We are unpersuaded.

24

### 1. *Negligence and Strict Liability*

In support of their contention that New York law does not recognize a tort action for property damage consisting of groundwater contamination, defendants quote *Sweet v. City of Syracuse*, 129 N.Y. 316, 335, 27 N.E. 1081, 1084 (1891) ("*Sweet*") ("no absolute property can be acquired in flowing water"); and they principally cite *City of Syracuse v. Gibbs*, 283 N.Y. 275, 283, 28 N.E.2d 835, 838 (1940) ("*Gibbs*") (the state has a duty "to control and conserve its water resources for the benefit of all the inhabitants of the State"); *Ivory v. International Business Machines Corp.*, 116 A.D.3d 121, 130, 983 N.Y.S.2d 110, 117 (3d Dep't 2014) ("*Ivory*") ("groundwater does not belong to the owners of real property"); and *MTBE*, 725 F.3d at 109 n.31 ("the City does not actually own the water in [its wells]").

These cases are inapposite. Neither *Sweet* nor *Gibbs* involved any issue of tort liability or water contamination; rather, both dealt with state appropriation of lake water for private use. *See Sweet*, 129 N.Y. at 334-35, 27 N.E. at 1084; *Gibbs*, 283 N.Y. at 281-83, 28 N.E.2d at 837-39. The *Ivory* court, in stating that "groundwater does not belong to the owners of real property," was dealing with a claim for trespass, not one for negligence or strict liability, *see* 116 A.D.3d at 130, 983 N.Y.S.2d at 117; further,

25

that case did not involve a claim either that the contamination had rendered the *Ivory* plaintiffs' drinking water supply non-potable or that the contamination had necessitated costly remediation, *see id*. at 125-29, 983 N.Y.S.2d at 113-17. And in *MTBE*, this Court, applying New York law, *see* 725 F.3d at 105, upheld a jury verdict in favor of the plaintiffs on their claim of negligence, *see id*. at 117-18, finding that the claimants could recover for remedial "costs incurred and projected" due to the well contamination at issue, *id*. at 107; *see id*. at 107-09.

Notwithstanding a general principle that no absolute property right can be had in flowing water, New York courts in cases involving "pollution of underground waters" have held that a claim of negligence "may be founded . . . upon a demonstration that" the defendant, *inter alia*, "failed to exercise due care in conducting the allegedly polluting activity." *Murphy v. Both*, 84 A.D.3d 761, 762, 922 N.Y.S.2d 483, 485 (2d Dep't 2011) (affirming denial of summary judgment on negligence claim that defendant's underground fuel tank caused "contamination of the adjacent real property"); *see also Strand v. Neglia*, 232 A.D.2d 907, 908, 649 N.Y.S.2d 729, 730 (3d Dep't 1996) (granting summary judgment dismissing claims of negligence and strict liability because of lack of "evidence of [defendant's] actual or constructive notice of defects in the underground storage tanks during the [relevant] period"); *Flick*

26

*v. Town of Steuben*, 199 A.D.2d 970, 970-71, 605 N.Y.S.2d 602, 603 (4th Dep't 1993) (as to a claim that defendant's salt pile had contaminated a well on plaintiff's adjacent property, reversing dismissal of the claim at the close of plaintiff's proof at trial). We see no error in the district court's denial of defendants' Rule 12(b)(6) motion to dismiss plaintiffs' negligence or strict liability claims for property damage.

2. *The Private Well Owners' Claims for Trespass*

To succeed on a trespass claim under New York law, a plaintiff must "show an interference with [its] right to possession of real property." *MTBE*, 725 F.3d at 119 (internal quotation marks omitted). The right to possession is thus "an essential element of a trespass action." *Niagara Falls Redevelopment, LLC v. Armand Cerrone, Inc.*, 28 A.D.3d 1138, 1138, 814 N.Y.S.2d 427, 428 (4th Dep't 2006) (internal quotation marks and alterations omitted). Defendants, in contending that plaintiffs who own private wells cannot state claims for trespass based on the contamination of those wells, principally repeat their argument that property damage claims cannot be based on harm to groundwater, again citing *Ivory*, which rejected "trespass claims based on contaminated groundwater, *because groundwater does not belong to the owners of real property*," *Ivory*, 116 A.D.3d at 130, 983 N.Y.S.2d at 117 (emphasis added).

27

Again, however, we find *Ivory* inapposite in this context because it did not involve contamination of a private well. In cases that did involve contamination of private wells, New York cases have found claims of trespass cognizable. *See, e.g.*, *Baity v. General Electric Co.*, 86 A.D.3d 948, 948-49, 951, 927 N.Y.S.2d 492, 493, 495 (4th Dep't 2011) ("*Baity*") (where there was no dispute that plaintiffs' "drinking water wells were contaminated" with a toxin, court affirmed the denial of defendants' motion for summary judgment as to claims of trespass, concluding there were "triable issues of fact" as to whether the defendant had reason to know the "toxins would pass from its industrial plant to plaintiffs' property" (internal quotation marks omitted)); *Kiley v. State of New York*, 74 A.D.2d 917, 917, 426 N.Y.S.2d 78, 78 (2d Dep't 1980) (affirming judgment in favor of plaintiff on trespass claim "predicated on defendant's failure to properly maintain its salt stockpiles," which resulted in the contamination of "claimant's well water").

3. *Diminution of Home Values*

Defendants also contend that plaintiffs' claims of property damage should have been dismissed on the basis that the law in New York as announced in *532 Madison* is that owners of property, in the absence of damage to that property,

28

have no cause of action for diminution of the value of the property. We disagree.

*532 Madison* dealt with several negligence suits brought in response to construction-related building collapses in midtown Manhattan. *See* 96 N.Y.2d at 286, 727 N.Y.S.2d at 51. The plaintiffs were local business owners whose physical properties were unharmed, but whose businesses suffered because the collapses necessitated blocking traffic and pedestrian access to plaintiffs' premises. The Court of Appeals ruled that such complaints, "where plaintiffs' sole injury is lost income," *id*., should be dismissed for failure to state a cognizable claim, *see id*. at 292, 727 N.Y.S.2d at 55.

Noting generally that "[a] landowner who engages in activities that may cause injury to persons on adjoining premises surely owes those persons a duty to take reasonable precautions to avoid injuring them," the Court stated that it "ha[d] never held . . . that a landowner owes a duty to protect an entire urban neighborhood against purely economic losses," *id*. at 290, 727 N.Y.S.2d at 54, and it ruled that the business owners' negligence claims "based on economic loss alone f[e]ll beyond the scope of the duty owed them . . . and should be dismissed," *id*. at 292, 727 N.Y.S.2d at 55. *See also* our opinion filed today in one of the two cases argued in tandem with the present appeals, *R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, No.

18-2018, --- F.3d ---, --- (2d Cir. 2020) (reversing denial of defendants' motion to dismiss the negligence claim of the corporate plaintiff, which plausibly claimed only loss of income).

*532 Madison* does not, however, require dismissal of property damage claims where the plaintiff alleges more than just lost business income. *See*, *e.g.*, *532 Madison*, 96 N.Y.2d at 290, 727 N.Y.S.2d at 54 (noting with approval the Appellate Division's decision in *Dunlop Tire & Rubber Corp. v. FMC Corp.*, 53 A.D.2d 150, 151-52, 385 N.Y.S.2d 971, 972 (4th Dep't 1976), which allowed the plaintiff to recover not only for physical damage to its property caused by a nearby explosion, but also for the economic loss from being forced temporarily to close because the explosion caused the loss of electrical power); *Cottonaro v. Southtowns Industries, Inc.*, 213 A.D.2d 993, 993, 625 N.Y.S.2d 773, 774 (4th Dep't 1995) ("consequential damages" are also available when the "market value of real property" is "diminished . . . as a result of public fear of exposure to a potential health hazard").

In the present cases, the property owner plaintiffs are not complaining of loss of income; and they seek damages not just for the diminution of the economic value of their homes. They allege the ruin of their drinking water by the PFOA released by defendants, and the need to expend money for remediation and clean-up.

30

The contamination of the drinking water at a residential property and the loss of wages or income at a commercial enterprise are qualitatively different injuries. We see no indication in *532 Madison* that the limitation on recovery of "economic loss" was intended to apply to relieve users of hazardous substances of any duty to avoid allowing those substances to contaminate residents' drinking water.

In sum, plaintiff property owners have pleaded damage to their homes in the form of contamination of their drinking--and cooking--water and the need to incur remedial expenses; they thus may also continue pursuit of diminution-in-value damages as consequential to these harms. Accordingly, we affirm the district court's denial of defendants' motion to dismiss the property owner plaintiffs' negligence and strict liability claims for property damage.

C. *Whether Plaintiffs Who Own Their Own Wells May Maintain Actions for Nuisance*

A cause of action for public nuisance "exists for conduct that amounts to a substantial interference with the exercise of a common right," such as "endangering" the "health[ or] safety . . . of a considerable number of persons." *532 Madison*, 96 N.Y.2d at 292, 727 N.Y.S.2d at 56. It is "well settled that the seepage of chemical

31

wastes into a public water supply constitutes a public nuisance." *Baity*, 86 A.D.3d at 951, 927 N.Y.S.2d at 495. Because a "public nuisance is a violation against the State," it is "subject to abatement or prosecution by the proper governmental authority." *532 Madison*, 96 N.Y.2d at 292, 727 N.Y.S.2d at 56. A "public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large." *Id*. The injury must be different in "kind," not simply "degree." *See id*. at 293-94, 727 N.Y.S.2d at 57.

The district court, while dismissing the public nuisance claims of the plaintiffs who received their water from Village wells, ruled that in two of the present actions, those brought by plaintiffs Thelma and David Benoit and plaintiffs Christine and James Jensen, who own private wells, plaintiffs are entitled to pursue claims of private nuisance. Defendants argue that the nuisance claims of these plaintiffs should also have been dismissed because the PFOA contamination affected the entire Village, and that these plaintiffs did not allege circumstances affecting them so specially as to allow them to pursue claims for private nuisance. We are unpersuaded.

The district court noted that these well-owners alleged that they need to have point-of-entry treatment systems installed on their property that would need to remain in place for the foreseeable future and would require regular maintenance.

These circumstances differed from the those of the 95% of the Village residents who received their water from Village wells, and for whom remediation could be performed at locations remote from their homes without personal inconvenience and without their personal efforts. The Benoits and Jensens also allege that they are entitled to recover for the costs of repair or restoration of their wells, expense and inconvenience of a kind that 95% of Village residents will not incur. We see no error in the ruling by the district court that the owners of private wells are entitled to pursue claims of private nuisance.

Finally, defendants also argue that plaintiffs in the present cases will not actually need to expend moneys for remediation because Village negotiations with defendants have resulted in defendants' agreeing to, *inter alia*, provide residents with filters and bottled water at no cost. Whether such agreements will actually have the effect that defendants predict is not a matter for resolution on a motion to dismiss for failure to state a claim.

D. *Whether Medical Monitoring May Be Ordered for a Plaintiff Who Has No*
    *Cognizable Claim for Personal Injury But Has a Claim for Property Damage*

The district court, in rejecting defendants' contention that plaintiffs who do not claim disease or symptoms of disease are as a matter of law not entitled to

medical monitoring, ruled that "*Caronia* appears to allow medical monitoring damages even if the only tort with a present 'injury' involves harm to property . . . ." *Benoit I*, 2017 WL 3316132, at *10. Thus, the court stated that

> *even if the accumulation of PFOA in the blood were not enough . . . Caronia [II]* also allows plaintiffs to seek medical monitoring as consequential damages for a *tort alleging injury to property. . . .* Plaintiffs have sufficiently alleged claims for . . . torts concerning property . . . . Therefore, *Plaintiffs cannot be denied medical monitoring damages at this stage.*

*Id.* (internal quotation marks omitted) (emphases ours). Defendants' challenge to this ruling--which would apply both to those Accumulation Plaintiffs who own property and to plaintiffs Martha Campbell and Randall Putnam, who own property but do not claim to have disease, symptoms of disease, or elevated levels of PFOA in their blood--was based on an interpretation of *Caronia II* that may or may not be correct. We think that whether New York law will allow medical monitoring to be ordered solely on the basis of damage to property is unclear, but that that issue is not ripe for resolution.

### 1. *Lack of Clarity*

*Caronia II*, in discussing the case before it, does indeed include many statements that seem to view personal injury and property damage as alternative

34

bases for the grant of medical monitoring as consequential damages. *See, e.g.*, 22 N.Y.3d at 446, 982 N.Y.S.2d at 43 ("Plaintiffs do not claim to have suffered physical injury *or damage to property*." (emphasis added)); *id*. at 446-47, 982 N.Y.S.2d at 43 ("plaintiffs' only potential pathway to relief is . . . recogni[tion of] a new tort," their complaint "[h]aving alleged no physical injury *or damage to property*" (emphasis added)); *id*. at 449, 982 N.Y.S.2d at 45 (in cases applying "the test enunciated in *Abusio* . . . where medical monitoring was sought as an element of damages . . . . the plaintiffs alleged either personal injury *or property damage* or both" (emphasis added)); *id*. at 449 n.2, 982 N.Y.S.2d at 45 n.2 (no New York case should be applied as authorizing "an independent cause of action for medical monitoring absent allegation of any physical injury *or property damage*" (emphasis added)); *id*. at 452, 982 N.Y.S.2d at 47 (declining to create an "independent cause of action for medical monitoring" "absent any evidence of present physical injury *or damage to property*" (emphasis added)).

One Appellate Division decision issued in the aftermath of *Caronia II* has interpreted "*Caronia [II]* . . . [as] indicat[ing] that medical monitoring can be recovered as consequential damages associated with a separate tort alleging property damage," *Ivory*, 116 A.D.3d at 131, 983 N.Y.S.2d at 118. On that basis, the *Ivory* court allowed "two plaintiffs [to] pursue medical monitoring damages consequential to the[ir]

35

trespass cause of action." *Id*. at 132, 983 N.Y.S.2d at 118 (reversing summary judgment to the extent that it dismissed a plaintiff's claim for medical monitoring relief on her trespass claim for the defendant's toxic chemicals contaminating the soil under her property). We note that that case ended in a settlement, rather than a final adjudication and order for medical monitoring. *See Ivory v. International Business Machines Corp.*, No. 2012-0768 (N.Y. Sup. Ct. Jan. 22, 2018) (case settlement).

Despite *Caronia II*'s many mentions of personal injury "or property damage" and *Ivory*'s interlocutory interpretation, it is not clear to us that New York law authorizes a claim for medical monitoring solely on the basis of damage to property. The context of *Caronia II*'s discussion was the question this Court certified, of whether an equitable "independent" cause of action for medical monitoring should be judicially created for habitual cigarette-smokers who expressly disclaimed any present personal injury, *Caronia I*, 715 F.3d at 450, and who did not indicate any semblance of a claim for property damage. Given the certified question's focus on whether New York law recognized such an independent claim for medical monitoring, *Caronia II*'s repeated mentions of personal injury "or property damage" claims may have been intended simply to emphasize the dichotomy between such a new independent equitable claim and traditional tort-law claims.

36

Further, a principal rationale stated by the New York Court of Appeals for declining to create an independent cause of action for medical monitoring in favor of persons who have no "clinically demonstrable presence of toxins in the[ir bodies]" and no "physical manifestation of toxin contamination," *Caronia II*, 22 N.Y.3d at 449, 982 N.Y.S.2d at 45 (internal quotation marks and brackets omitted), suggests that the New York courts would not recognize a claim for medical monitoring based solely on property damage. The Court stated that

> dispensing with the *physical injury* requirement could permit "tens of millions" of potential plaintiffs to recover monitoring costs, effectively flooding the courts while concomitantly *depleting the purported tortfeasor's resources for those who have actually sustained damage* . . . . Moreover, it is speculative, at best, whether asymptomatic plaintiffs will ever contract a disease; allowing them to recover medical monitoring costs *without first establishing physical injury* would lead to the *inequitable diversion* of money away from those who have actually sustained an injury as a result of the exposure.

22 N.Y.3d at 451, 982 N.Y.S.2d at 47 (emphases added). A plaintiff who has only a property damage claim has, by hypothesis, no claim for personal injury, *i.e.*, has no disease, no symptoms of disease, no clinically demonstrable presence of toxins in the body, no physical manifestation of any toxin contamination. While the availability of medical monitoring for such a plaintiff might be legislated, the *Caronia II* Court's

37

stated concern--that judicial recognition of a right to medical monitoring without establishing physical injury would risk an inequitable allocation of resources--creates doubt as to whether that Court meant to indicate that medical monitoring is available as relief for a claim solely of property damage, *e.g.*, for an absentee landlord.

In the final paragraph of its opinion in *Caronia II*, the New York Court of Appeals stated:

> [1] We conclude that the policy reasons set forth above militate against a judicially-created *independent* cause of action for medical monitoring. [2] Allowance of *such* a claim, *absent any evidence of present physical injury **or damage to property***, would constitute a significant deviation from our *tort* jurisprudence. [3] That does not prevent plaintiffs who have in fact sustained *physical injury* from obtaining the remedy of medical monitoring. [4] Such a remedy has been permitted in this State's courts as consequential damages, so long as the remedy is premised on the plaintiff establishing entitlement to damages on *an* already existing *tort* cause of action.

*Id*. at 452, 982 N.Y.S.2d at 47-48 (emphases and brackets ours). Thus, while the second sentence of this passage contrasts independent medical monitoring claims with existing tort jurisprudence that requires evidence of present physical injury or damage to property, the third sentence refers only to personal injury, not to property damage, as a current basis for an award of medical monitoring. And while the fourth sentence on its face, referring to medical monitoring as available to a "plaintiff

38

establishing entitlement to damages on *an* already existing *tort* cause of action" may appear to refer generally to all torts, the sentence may instead be interpreted as using "tort" claims to refer only to claims of personal injury, as that is the only type of tort mentioned in the immediately preceding sentence; and plaintiffs have not called to our attention any New York case--nor have we found any--in which medical monitoring was ordered for any plaintiff solely on the basis of his or her success in suing for damage to property.

In sum, it is hardly clear to us that *Caronia II* envisioned authorizing an award of medical monitoring to a plaintiff who has no cognizable claim for personal injury but succeeds on a claim for property damage. However, we conclude that that question need not be answered at this point.

2. *Lack of Ripeness for Decision*

These cases are before us pursuant to a procedure authorizing the court of appeals to allow an immediate appeal from an interlocutory order in a civil action in which the district court has certified its view (1) that the "order involves *a controlling question of law* as to which there is substantial ground for difference of opinion *and* [2] that an immediate appeal from the order may *materially advance the*

*ultimate termination of the litigation*," 28 U.S.C. § 1292(b) (emphases added). When the district court has so certified, the party wishing to appeal must petition for and obtain permission from the court of appeals to bring such an immediate appeal. *See id*.

In the present case, as the foregoing discussion indicates, there is ample ground for difference of opinion as to whether New York law recognizes the availability of medical monitoring for a claim based solely on property damage. However, as to that question, we do not see that it is controlling or that its resolution at this stage may "materially" advance the termination of the litigation.

"Inherent in the requirements of section 1292(b) is that the issue" in the certified order "be ripe for judicial determination," because the "purpose of section 1292(b) is not to offer advisory opinions rendered on hypotheses which (evaporate) in the light of full factual development." *The Oneida Indian Nation of New York State v. The County of Oneida*, 622 F.2d 624, 628 (2d Cir. 1980) (internal quotation marks omitted); *see id*. at 627 (dismissing the appeal on the ground that "the petition [for leave to appeal] was improvidently granted"). "[If] the premise of the certified question may be destroyed, it is not yet ripe for review." *Id*. at 628; *see also New York City Health & Hospitals Corp. v. Blum*, 678 F.2d 392, 397 (2d Cir. 1982) (the § 1292(b) procedure does not authorize an interlocutory appeal that would result in "an

advisory decision based on a premise that may be destroyed"); *id*. at 398 (dismissing the appeal on the ground that "the § 1292(b) certification was improvidently granted"). These principles lead us to the conclusion that a § 1292(b) appeal of the district court's ruling that medical monitoring is available relief for property damage is inappropriate.

As indicated above, this ruling may affect two groups of plaintiffs: (1) the Accumulation Plaintiffs who also have property damage claims, and (2) plaintiffs Campbell and Putnam, who now have only property damage claims. As to the former, we have ruled (*see* Part II.A. above) that the district court properly refused to dismiss their claims for personal injury, given their allegations that they have elevated levels of PFOA in their blood. Thus, the Accumulation Plaintiffs have cognizable claims of personal injury, a tort for which medical monitoring has previously been granted as consequential damages. If they prove their personal injury claims, medical monitoring is an available form of relief, without regard to their claims of property damage.

As to plaintiffs Campbell and Putnam who are asymptomatic and have not alleged elevated PFOA levels in their blood and whose claims of personal injury have thus been dismissed--and as to any property-owner Accumulation Plaintiffs

41

who eventually fail to prove their claims of personal injury--their claims of property damage will have to be adjudicated. As to any such plaintiff who fails to establish an element of the property damage claim, the request for medical monitoring will be moot. Hence, it is difficult to see that the question of whether medical monitoring is theoretically available for such a claim is a question that is controlling.

Further, as set out in Parts I.B. and II.B. above, these plaintiffs--like all of the other plaintiff property owners--request not just medical monitoring but an array of relief, including orders requiring defendants to implement testing with respect to their properties and their drinking water, orders for remediation, and awards of compensatory and punitive damages. To be awarded any of these other types of relief, plaintiffs will need to establish all of the usual elements of a property damage claim. We cannot see that an immediate answer to the question of whether medical monitoring will also be available would "materially" advance the ultimate termination of any of these lawsuits.

Accordingly, we conclude that the district court's ruling that medical monitoring is available relief for a claim of property damage is not one that meets the criteria for immediate review under 28 U.S.C. § 1292(b). That ruling remains unreviewed until such time as, if ever, the question becomes ripe.

42

CONCLUSION

We have considered all of defendants' arguments on this appeal and have found in them no basis for reversal. For the reasons stated above, the order of the district court, to the extent that it denied defendants' Rule 12(b)(6) motion to dismiss plaintiffs' claims (1) for personal injuries and for medical monitoring in connection with those injuries, (2) for property damage suffered by plaintiffs who own the properties at issue, and (3) for trespass and nuisance suffered by plaintiffs who own private wells, is affirmed. To the extent that appeal was allowed with respect to the district court's ruling that medical monitoring relief will be available to a plaintiff who proves only damage to property, we dismiss the appeal as having been improvidently allowed.